UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JENNIFER KUKLA,

        Petitioner,        Civil Case No. 12-14007
                                          Honorable Terrence G. Berg
v.

MILLICENT WARREN,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

The petitioner, Michigan state prisoner Jennifer Kukla, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  She challenges her convictions for two counts of first-degree premeditated murder.  Kukla raises four claims for relief.  For the reasons set forth below, the Court denies the petition.

**I.  Background**

Kukla's convictions arise from the stabbing deaths of her two children, 8-year-old Alexandra and 5-year-old Ashley, in February 2007, at her home in Macomb County.  The Michigan Court of Appeals described the circumstances leading to Kukla's convictions as follows:

> Defendant's convictions arise from the tragic deaths of her two children, who were killed when defendant slashed their throats.  At trial, the prosecution presented several lay witnesses who testified about defendant's bizarre conduct and statements before and after the killings.  According to several witnesses, defendant appeared frantic and distraught on the day before the killings, stated that she was hearing voices, appeared to speak to someone who was not present, and claimed that she had been hypnotized and done bad things in the past.  When defendant's sister arrived at defendant's house the next

day, defendant advised that she had killed her children and would be going to hell. Defendant told her sister to call the police. When the police arrived shortly thereafter, defendant appeared calm and also told them she was going to hell because she had just killed her kids. The police discovered defendant's children in the bedroom. They both died from multiple stab wounds, primarily to their throats. Defendant had four or five cuts to her lower wrist, but none were life threatening.

In addition to the testimony of bizarre behavior, the prosecution also presented lay witnesses who testified that defendant was a functioning alcoholic who was experiencing numerous life stresses. A neighbor and friend testified that just days before the murders, defendant advised that her employer was strictly adhering to work schedules. Defendant complained that her children had kept her up late, causing her to be late for work, but her employer told her not to come in. As a result of this incident, defendant stated that she could just "kill" her kids. To the neighbor, this statement was made in frustration. Additionally, defendant was having trouble with car maintenance, having trouble maintaining her trailer, and having trouble obtaining running water due to frozen pipes. Defendant also believed that a family member had called child protective services, an agency that had removed defendant's children in the past.

Defendant presented a defense of legal insanity. Three psychologists examined her before trial. The night before the murders, defendant reported hearing a sinister voice repeatedly warn her that "they" were coming, and she believed that people were planning on taking her children to a place where they would be sexually molested, tortured, and eaten. She explained that she killed her children to protect them from a fate worse than death. All three psychologists who examined defendant opined that she was legally insane at the time of the killings. The experts also acknowledged that one can experience a psychotic break that was subject to an insanity defense, but a break induced by alcohol hallucinations did not provide a legal defense. Despite the expert testimony, the jury found that defendant was guilty but mentally ill for the murders of her two children.

*People v. Kukla,* No. 282017, 2009 WL 3199503 *1 (Mich. Ct. App. Oct. 6, 2009).

Kukla filed a direct appeal of her conviction raising this claim: the evidence was legally insufficient to support the first-degree murder convictions and the

2

verdicts were against the great weight of the evidence. The Michigan Court of Appeals affirmed her convictions. *Id.*

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. She raised the same claim raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Kukla*, 485 Mich. 1081 (Mich. Jan. 29, 2010).

Kukla then filed a motion for relief from judgment in the trial court. She raised these claims: (i) evidence was insufficient to sustain the convictions and the verdict was against the great weight of the evidence; (ii) ineffective assistance of trial counsel; (iii) ineffective assistance of appellate counsel; (iv) due process of law violated by defense counsel's stipulation that Kukla was competent to stand trial; and (v) cause was established. The trial court denied the motion. *People v. Kukla*, No. 2007-2806-FC (Macomb County Cir. Ct. Feb. 4, 2011). Kukla filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Kukla*, No. 303221 (Mich. Ct. App. Oct. 4, 2011); *People v. Kukla*, 492 Mich. 852 (Mich. July 24, 2012).

Kukla then filed the pending habeas petition. She raises these claims:

I. The three psychologists who testified at trial opined that Jennifer Kukla was legally insane at the time of the homicides. The experts also concluded she had not faked her symptoms. Lay-witness testimony further established she was descending into an acute psychosis only hours before the homicides. The evidence was legally insufficient to support the first-degree murder convictions, and the verdicts were against the great weight of the evidence.

II. Petitioner was denied a fair trial by ineffective assistance of counsel at

3

trial.

III. Petitioner is entitled to relief because she was denied her right to the effective assistance of appellate counsel.

IV. Petitioner's Fourteenth Amendment right to due process of law as well as the statute of M.C.L.A. § 330.2022(1) were violated, and she was denied effective assistance of counsel, by counsel"s stipulation that Petitioner was competent to stand trial.

## II.  Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if

4

the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, —, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.

*See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones,* 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**III. Discussion**

**A. Sufficiency of the Evidence**

In her first claim for habeas relief, Kukla argues that insufficient evidence was presented to support her convictions and that the jury's verdict was against the great weight of the evidence.

The Court first addresses Kukla's sufficiency of the evidence claim. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review,

review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, a criminal defendant is presumed sane. *People v. Kukla*, 2009 WL 3199503 at *2, *citing People v. Murphy*, 416 Mich. 453, 463 (1982). Legal insanity is an affirmative defense and, under Michigan law, "An individual is legally insane if she proves, as a result of mental illness as defined in the mental health code, that she lacked the substantial capacity to appreciate the nature and quality or the wrongfulness of her conduct or lacked the ability to conform her conduct to the requirements of the law." *Kukla*, 2009 WL 3199503 at *2, *citing*

7

*People v. Carpenter*, 464 Mich. 223, 230-31 (2001); Mich. Comp. Laws § 768.21a(1). In addition, a person may be found guilty but mentally ill if: "(a) the defendant is found guilty beyond a reasonable doubt of the charged offense; (b) the defendant proved, by a preponderance of the evidence, that she was mentally ill at the time of the commission of the offense; and (c) the defendant did not establish, by a preponderance of the evidence, that she 'lacked the substantial capacity either to appreciate the nature and quality or the wrongfulness of ... her conduct or to conform ... her conduct to the requirements of the law.'" *Id.* at *3, quoting Mich. Comp. Laws § 768.36(1).

Three expert witnesses testified that Kukla was legally insane at the time of the murders. The Michigan Court of Appeals noted that the question of whether a defendant was sane or insane at the time of the offense, ultimately, though is a question for the trier of fact to resolve. *Kukla*, 2009 WL 3199503 at *3. The Michigan Court of Appeals held that the jury was reasonable in rejecting the expert witness testimony and concluding that, while mentally ill, Kukla was not legally insane at the time of the offense. In a thoughtful, well-reasoned, comprehensive opinion, the Michigan Court of Appeals explained its reasoning as follows:

> Although the experts opined that defendant was legally insane at the time of the homicides, they acknowledged that their opinions were based on subjective assessments of the evidence and self-reporting by defendant. That is, because no one else was present at the time of the crimes, they had to evaluate all of the witness statements and defendant's account of what occurred. Additionally, it was acknowledged that, if defendant's psychotic break was a result of alcohol hallucinations, she would not be entitled to the legal defense of insanity. Nonetheless, Dr. Clark opined that defendant did not have

that much to drink and had stopped drinking after approximately four beers, despite a habit of drinking six to twelve beers on a daily basis. Dr. Clark gave credence to defendant's report of alcohol use. However, contrary to defendant's own statement, her sister testified that defendant had approximately four beers and she was seemingly drunk. Later that evening when the sister returned to pick up a car seat, defendant had consumed an additional seven to eight beers. Therefore, the evidence regarding alcohol use on the night in question conflicted.

Furthermore, the expert testimony revealed that a psychotic break normally lasted for an extended duration. In this case, defendant's psychotic break only lasted for a short period of time. Although this was unusual, the experts opined that it did not preclude a finding of legal insanity. Further, the psychotic break caused defendant to believe that she had to adhere to the voices; she had to kill her daughters or they would be subjected to a far worse fate. However, the voices also told defendant to kill herself. Yet, defendant did not kill herself, and the injury that defendant inflicted to herself was deemed not life threatening. On the contrary, defendant's sister opined that the wounds appeared to be significant. Therefore, although the experts opined that defendant suffered a psychotic break that caused her to kill her children, the jury had evidence that defendant did not adhere to the request of the voices to the extent defendant was told to kill herself.

Moreover, legal insanity arose where a person failed to appreciate the wrongfulness of the conduct. In this case, defendant acknowledged on multiple occasions that she knew right from wrong and would go to hell because of her acts. However, an expert opined that the reference to police and hell may have meant that the police would literally take defendant to hell. This dispute regarding the import of defendant's statements presented a factual issue that the jury was required to resolve.

Additionally, at the conclusion of defendant's police interview, when asked if she had anything else to state, defendant answered, "Don't have kids." Dr. Clark was aware of the statement, but did not ask defendant about it. None of the experts commented upon defendant's frustration with her children and the impact on her employment. Nonetheless, Dr. Clark continued to opine that the homicides were not the result of the financial stresses and alcohol use, but rather legal insanity. The jury did not follow the opinions offered by the experts,

9

> but rather concluded that defendant was guilty but mentally ill at the time of the homicides.
>
> In this case, review of the expert testimony revealed that it was subjective, based on self-reporting by defendant, and contradicted by testimony of lay witnesses. The jury is not required to follow expert testimony on the issue of insanity and may rely on lay witnesses. *Murphy, supra.* The value of an expert's testimony is contingent upon the facts and circumstances upon which it is based. . . . Here, the experts acknowledged that there were foundational questions for which they made assumptions. It is the province of the jury to resolve these issues. Therefore, there was sufficient evidence to support the jury verdict, and the verdict was not against the great weight of the evidence.

*Kukla*, 2009 WL 3199503, at *4-5.

A jury is free to accept or reject an expert's testimony as it could with any other witness. *United States v. Glover*, 265 F.3d 337, 345 (6th Cir. 2001). *See also Diestel v. Hines*, 506 F.3d 1249, 1268 (10th Cir. 2007) ("[J]uries need not be swayed by expert psychiatric testimony, regardless of disparities in the number or thoroughness of experts on either side of a case."). The trier of fact may "consider expert testimony in light of all other testimony presented...and not necessarily accept the ultimate conclusions of the experts as to the defendant's legal sanity or insanity." *Greider v. Duckworth*, 701 F.2d 1228, 1239 (7th Cir. 1983).

While three expert witnesses opined that Kukla was legally insane at the time of the offense, the expert witnesses' testimony was not without problems. Dr. George Watson acknowledged that his interpretation of Kukla's mental state was based in large part on her own reported symptoms. There was no way to confirm Kukla's report of hearing voices were true. He further acknowledged that

10

psychiatry had no definitive test that would render a diagnosis in clear black and white terms, and that, ideally, a psychiatrist would study a patient for a longer duration before reaching a diagnosis. Dr. Watson also conceded that it was inconsistent for Kukla not to have harmed herself but to have brutally killed her children when she claimed that the voices were telling her to harm herself as well. Dr. Charles Clark, while firmly of the belief that Kukla was legally insane at the time of the offense, also acknowledged that the only person who relayed what happened when the children were killed was Kukla herself. Finally, the third expert, Dr. Lyle Danuloff, offered little testimony in support of the insanity defense, other than his ultimate conclusion that Kukla's state of mind satisfied the definition of legal insanity under Michigan law. He was shown to have little experience with criminal forensic psychiatry.

     The expert witnesses based their conclusions on Kukla's own reports of her symptoms and the witnesses conceded that the sudden onset and relatively brief duration of Kukla's reported psychosis was an unusual manifestation of the illness. The jury also appears to have considered Kukla's ability to ignore the supposed voices that told her to harm herself but not demonstrate similar resistance against the urging to harm her children. The jury also may have considered Kukla's statement that she would be going to hell. The foregoing reasonably may have led the jury to conclude that Kukla understood the wrongfulness of her conduct and that she had the ability to conform to the law. The state court's sufficiency determination is adequately supported by the record.

Kukla also argues that the verdict was against the great weight of the evidence. This claim is meritless. In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642 (1998) (internal quotation omitted). The grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Id.* at 634 n. 8. Thus, a claim that a verdict is against the great weight of the evidence alleges an error of state law, which is not cognizable on habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law").

## B. Ineffective Assistance of Trial Counsel Claims

In her second and fourth habeas claims, Kukla argues that she received ineffective assistance of trial counsel. Specifically, Kukla argues that counsel was ineffective in failing to investigate her insanity defense and failing to request a competency hearing rather than stipulating to her competence to stand trial.

To establish that she received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires

12

a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

The last state court to issue a reasoned opinion regarding this claim was the trial court in its order denying Kukla's moton for relief from judgment. The trial court rejected the ineffective assistance of counsel claim, finding it "is not supported by the record and is without merit." *People v. Kukla*, No. 07-2806-FC (Macomb County Cir. Ct. Feb. 4, 2011). This decision, although brief, is entitled to full deference under the AEDPA. *Harrington,* 562 U.S. at —, 131 S. Ct. at 783. Kukla, therefore, satisfies her burden only by showing "there was no reasonable basis for the state court to deny relief." *Id.*

Petitioner is unable to overcome the strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. First, with respect to the question of counsel's investigation of her sanity, three witnesses testified Kukla was legally insane at the time of the murders. Although some attorneys may have sought additional expert witnesses, that is not the test for habeas review. The Supreme Court has stated that there are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. "It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it." *Harrington*, 562 U.S. at —, 131 S.Ct. at 789. Where three expert witnesses testified that Kukla was legally insane, counsel was reasonable in concluding no more were necessary. Kukla has failed to demonstrate that her counsel's representation fell below the reasonableness standard set forth in *Strickland*.

In addition, Kukla has not demonstrated that she suffered prejudice from her counsel's performance. Her arguments are based upon speculation as to what a further investigation would have revealed and what impact that may have had on her defense. Such arguments are simply too speculative to prove prejudice under *Strickland* and the AEDPA's deferential standard. *See Hanna v. Ishee*, 694 F.3d 596, 619 (6th Cir. 2012).

14

Kukla's second argument, that her defense counsel should not have stipulated to her competence to stand trial and instead should have moved for a competency hearing is similarly flawed. Other than unsupported speculation, she provides no support for the claim that she was incompetent to stand trial. The expert witnesses testified that her psychotic episode was short-lived and had passed by the time she was interviewed. She was represented to be responsive to interviews, oriented as to time and place, and none of the experts found her unable to participate in the evaluations. Without more, Kukla's assertion that she was incompetent is simply insufficient to render the state court's decision an unreasonable application of *Strickland*.

**C. Ineffective Assistance of Appellate Counsel Claims**

Finally, Kukla raises a claim that her appellate attorney was ineffective in failing to raise her ineffective assistance of trial counsel claims on direct appeal. She raises this claim in an attempt excuse the anticipated procedural default of her ineffective assistance of trial counsel claims. Respondent did not argue that these claims were procedurally defaulted, nor did the Court *sua sponte* raise procedural default. Nevertheless, the Court briefly addresses Kukla's ineffective assistance of appellate counsel claim.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and

15

> impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Kukla claims that appellate counsel was ineffective in failing to raise on direct review the ineffective assistance of counsel claims she raised on collateral review and in her habeas petition. Kukla has failed to show that any of these claims were potentially meritorious. Therefore, she cannot show that her appellate attorney was ineffective for failing to raise them on direct appeal.

## IV.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is **FURTHER ORDERED** that a certificate of appealability is **DENIED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:   April 9, 2015

### Certificate of Service

I hereby certify that this Order was electronically submitted on April 9, 2015, using the CM/ECF system, which will send notification to each party, and sent to unrepresented parties via postal mail at the address of record.

s/A. Chubb
Case Manager
